O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| LE T. LEUNG, | ) | Case No. CV 06-07593-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

This is an action for judicial review of the Commissioner's final decision denying Plaintiff Le T. Leung's application for Social Security Disability Insurance benefits. For the reasons set forth below, the case shall be remanded for further proceedings.

**I.   Background**

Plaintiff filed for benefits on January 22, 2002, when she was forty-six years old, alleging that she became disabled and unable to work on December 31, 2000, due to diabetes, dizziness, insomnia, and seizures. (Administrative Record ("AR") 68-70.) The Social Security

Administration denied benefits initially and upon reconsideration, and a *de novo* hearing was held before an Administrative Law Judge ("ALJ") on October 15, 2002. (AR 14-22.) In a decision issued on November 25, 2002, the ALJ determined that Plaintiff is not disabled and not entitled to disability benefits. (AR 17-22.) Plaintiff sought judicial review of the ALJ's decision and on November 24, 2003, pursuant to the parties' joint stipulation, this Court remanded the case to the Commissioner in order to "further evaluate the claimant's mental illness." *Leung v. Barnhart*, No. CV-03-2555-MLG (C.D. Cal. 2003); (AR 241-42).

Plaintiff filed a subsequent application for disability insurance benefits on May 2, 2003, which was denied. (AR 307-10, 361-63.) Plaintiff requested a *de novo* hearing, and the 2002 and 2003 applications were consolidated and both were heard before ALJ Joel B. Martinez. (AR 197.) A hearing was started on May 27, 2005, and was continued on October 19, 2005. (Id.) In a decision dated December 14, 2005, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of decision. (AR 196-209). The ALJ specifically found: 1) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; 2) Plaintiff has severe impairments consisting of diabetes mellitus, a complex partial seizure disorder, and a dysthymic disorder; 3) these impairments do not meet or medically equal any of the listed impairments in the governing regulations; 4) Plaintiff has no exertional limitations, but she should not work at unprotected heights or around dangerous machinery; she should not drive or work in a cold environment; and she is limited to simple work; and 5) based on the testimony of a vocational expert, that there are significant numbers of jobs in the national economy that Plaintiff can perform, such as laundry worker, rack loader,

and machine feeder.

The Appeals Council denied review. (AR 168-69.) Plaintiff then commenced this action for judicial review, raising a single claim of error: that the ALJ failed to properly account for Plaintiff's illiteracy in concluding that there are available jobs in the national economy. (Jt. Stip. 5-9.)

**II.  Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's decision must be upheld unless "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

//
//
//

**III. Discussion and Analysis**

Plaintiff claims that the ALJ erred at the fifth and final step of the sequential disability analysis[1] by incorrectly classifying Plaintiff's educational background under the regulations as "limited" rather than "illiterate" or "unable to communicate in English."

Because Plaintiff was able to establish that she is not able to perform her past relevant work, the Commissioner had the burden of showing that Plaintiff can perform other work that exists in significant number in the national economy. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114-15 (9th Cir. 2006). The Commission can meet this burden in two ways: (1) through the testimony of a vocational expert ("VE"); or (2) by reference to Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, App. 2, §§ 200.00-204.00 ("the grids"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).

A claimant's education is one of the factors used to assess whether the claimant can perform available jobs. *See* 42 U.S.C. § 423(d)(2)(A); *Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 555 (6th Cir. 1995) ("Congress clearly intended the Secretary to consider education when determining whether the claimant can perform other substantial gainful work which exists in the national economy");  "Education is primarily used to mean formal schooling or other training which contributes to [the claimant's] ability to meet vocational requirements...." 20 C.F.R. § 404.1564(a). "The term education also includes how well [the claimant is] able to communicate in English since this ability is often acquired or improved by education." Id. § 404.1564(b). The Commissioner uses five categories in assessing

---

[1] *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (detailing the five-step sequence).

educational level: illiteracy; marginal education; limited education; high school education and above; and inability to communicate in English. Id. §§ 404.1564(b)(1)-(5).

Under the regulations, the Commissioner "generally consider[s] that a 7th grade through the 11th grade level of formal education is a limited education." 20 C.F.R. § 404.1564(b)(3). At the hearing the ALJ found that Plaintiff had received an 8th grade education and thus had a limited education. (AR 555.) The ALJ then elicited the following testimony from a VE in making the step five determination in this case:

> [ALJ]: [I]f I give you a hypothetical person of the claimant's age, education, and work history that would have no exertional limitations, would be precluded from working at heights or around dangerous machinery, no driving, and no cold environment, and limited to simple work, would such a person be able to perform the claimant's past relevant work?
>
> [VE]: No.
>
> [ALJ]: Is there any other work that could be performed by such a person?
>
> [VE]: Yes, Your Honor. I could provide the Court with three samples.

(AR 557.) The VE then went on to identify Laundry Worker I, Dictionary of Occupational Titles ("DOT") No. 361.684-014, Rack Loader, DOT No. 590.687-018, and Medium Machine Feeder, DOT No. 699.686-010, as jobs that are available in the national economy that Plaintiff can perform. (AR 557.) In the ALJ's written decision he concluded that there were a significant number of jobs in the national economy that Plaintiff could

perform "[b]ased on the testimony of the [VE], and considering the claimant's age, education, work experience and residual functional capacity." (AR 208.) Relying on the VE's testimony, the ALJ specifically cited Laundry Worker I, Rack Loader, and Machine Feeder as examples of such jobs. (Id.) The ALJ also stated that he used section 204.00 of the grids as a framework for determining that jobs existed which Plaintiff could perform. (Id.)

"In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002); *accord Robbins*, 466 F.3d at 886. Significantly, the ALJ posed a hypothetical in which the individual had a limited education,[2] a finding that has no basis in the record. Plaintiff immigrated to the United States in 1986, when she was 31 years old. (AR 68, 520.) Although Plaintiff had six years of formal education in Vietnam and can read and write in Vietnamese, she studied English at night classes for only a short period of time upon arriving in the United States and indicated on her application for benefits that she cannot read, write, or speak English. (AR 75, 77, 86, 519-20.) Plaintiff required an interpreter at the administrative hearings and at various medical visits. (AR 146, 471, 518.) All the evidence points to the conclusion that Plaintiff is unable to communicate in English, 20

---

[2] In the his decision, the ALJ finds that Plaintiff is marginally educated, which generally means that the claimant has received "formal schooling at a 6th grade level." 20 C.F.R. § 404.1564(b)(2). As discussed below, substantial evidence in the record supported an educational level of illiteracy. Even if the Court accepts "marginally educated" as the ALJ's finding, it was not supported by the record. But because the Court is concerned with the hypothetical as posed to the VE, the finding of limited education is used.

6

C.F.R. § 404.1564(b)(5), which also makes her illiterate under the regulations, id. § 404.1564(b)(1). *See Pinto v. Massanari*, 249 F.3d 840, 846 n.3 (9th Cir. 2001) ("Illiteracy is subsumed under inability to communicate in English.") (quoting Soc. Ser. Rep. Ser. 855 Acquiescence Rul. 86-3(5) (1983-1991)). The ALJ's determination at step five was based in part on an educational level that was not supported by substantial evidence in the record, and therefore was in error.

The ALJ's use of an incorrect educational level was not without consequence. The three jobs cited by the VE as options for Plaintiff, which were also adopted by the ALJ in his findings, require that the worker possess a language level of at least one.[3] Dictionary of Occupational Titles, http://www.occupationalinfo.org/. At language level one, an individual can read at a rate of 95-120 words per minute and "[c]ompare similarities and differences between words and between series of numbers"; "[p]rint simple sentences containing subject, verb, and object, and series of numbers, names, and addresses"; and "[s]peak simple sentences, using normal word order, and present and past tenses." Id., http://www.occupationalinfo.org/appendxc_1.html#III. The DOT lists

---

[3] The DOT is presumptively authoritative on the characteristics of jobs in the national economy. *Pinto*, 249 F.3d at 845-46. The parties dispute the proper application of *Massachi v. Astrue*, 486 F.3d 1149 (9th Cir. 2007), to this case, but *Massachi* is inapposite. *Massachi* dealt with whether "an ALJ may rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the [DOT]." *Id.* at 1152. *Massachi* would bear on this case only if the VE deviated from the job requirements reflected in the DOT. But the issue in this case is not whether the hypothetical individual posed by the ALJ would be able to work the particular jobs, but whether the hypothetical individual accurately reflected the Plaintiff.

The Commissioner argues that the VE must have accounted for Plaintiff's illiteracy based on the VE's observations at the hearing (Jt. Stip. 15 n.3), but this assertion is belied by the clear wording of the ALJ's hypothetical.

the language requirements associated with a job for a reason. "The ability to communicate is an important skill to be considered when determining what jobs are available to a claimant. Illiteracy seriously impacts an individual's ability to perform work-related functions such as understanding and following instructions, communicating in the workplace, and responding appropriately to supervision." *Pinto*, 249 F.3d at 846. The evidence in this case does not support a finding that Plaintiff possesses even the minimal level of language aptitude that the jobs cited by the ALJ require.

Contrary to the Commissioner's contention, this reading of the DOT does not mean "that no one who does not speak English would be able to work in the United States." (Jt. Stip. 15 n.3.) Of course "[a] claimant is not per se disabled if he or she is illiterate. [This Court] merely hold[s] that in order for an ALJ to rely on a job description in the [DOT] that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation." *Pinto*, 249 F.3d at 847.

Defendant does not seem to dispute the fact that Plaintiff is illiterate, and instead argues that "in spite of the adversity of her illiteracy, substantial evidence supports the ALJ's determination that Plaintiff could perform alternative work." (Jt. Stip. 14.) Defendant's argument assumes that the ALJ's finding was informed exclusively by the application of Rule 204.00 of the grids, which applies to claimants who are able to perform heavy work. If Defendant's assumption was correct, then Plaintiff's education would arguably have no bearing on the ALJ's determination at step five because "an impairment which does not preclude heavy work...would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may

be considered adverse." 20 C.F.R. Part 404, Subpart P, App. 2, Rule 204.00.[4] However, the ALJ specifically stated that he based his finding on the testimony of the VE and the claimant's education, neither of which were based on substantial evidence in the record. Accordingly, the ALJ's step five determination was made in error.

Because Plaintiff's language limitations preclude her from performing the occupations identified by the ALJ, the matter must be remanded for the ALJ to determine whether jobs exist in the local and national economy in significant numbers that Plaintiff is able to perform.

**IV. Conclusion**

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. It is **ORDERED** that this case be remanded to the Commissioner for further proceedings consistent with this opinion.

DATED: August 1, 2007

_____
MARC L. GOLDMAN
United States Magistrate Judge

---

[4] Plaintiff does not raise the issue of whether the ALJ's finding that Plaintiff can perform heavy work is based on substantial evidence in the record, and accordingly the Court does not address the issue.